## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATASHA GREGG,<br><br>                              Plaintiff,<br><br>v.<br><br>SYNCHRONY FINANCIAL,<br>                              Defendant. | **Case No.:**<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>   1.  FCRA, 15 U.S.C. §§ 1681a–x |

Plaintiff Natasha Gregg, by and through her undersigned attorneys, as and for her first complaint alleges the following against Synchrony Financial ("Synchrony"):

## **INTRODUCTION**

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA").

2. Furnishers of information like Defendant generally have no duties under the FCRA. Once a consumer lodges with a consumer reporting agency ("CRA") a dispute of information that a furnisher like Synchrony provides, that dispute is transferred to the furnisher. Once it receives the dispute, the furnisher is obligated to reasonably reinvestigate the validity of the dispute. 15 U.S.C. § 1681s-2(b); *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426 (4th Cir. 2004).

3. Plaintiff learned the Defendant was reporting to the Big Three CRAs inaccurate information about accounts that were not hers. Plaintiff disputed these inaccuracies with the CRAs, and the Defendant did not correct the inaccuracies.

4. Plaintiff alleges violations of the FCRA against Synchrony Financial and its agents for their failure to conduct a reasonable reinvestigation after receiving notice of a dispute and for their failure to accurately correct and update or delete Plaintiff's information for a period of time subsequent to receiving notice of Plaintiff's dispute.

*Gregg v. Synchrony Financial*
Complaint and Demand for Jury Trial

## JURISDICTION AND VENUE

5.      The Court's jurisdiction arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7.      Plaintiff is a natural person residing in Queens County, New York.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Synchrony is a "person," as defined under 15 U.S.C. § 1681a(b) and can be served at its registered agent: CORPORATION TRUST COMPANY, 1209 Orange Street, Wilmington, DE 19801. Synchrony is also a "furnisher" as defined by the FCRA and caselaw interpreting the statute.

10.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times pertinent to the violations alleged in this Complaint.

## GENERAL FACTUAL ALLEGATIONS

11.     On or about April 12, 2019, Plaintiff received a letter from Synchrony Bank informing her that her account was being closed. Synchrony's letter cited Plaintiff's Trans Union credit report and explained it was closing her account for the following reasons: a derogatory public record or collection, high proportion of balances to credit limits, "lack of recent installment loan information" and "too few accounts currently paid as agreed."

12.     On or about September 15, 2019, Plaintiff received a denial letter from Synchrony Bank. Synchrony said it could not approve Plaintiff for a TJX Rewards Card for which she applied after reviewing her Trans Union credit report.

*Gregg v. Synchrony Financial*
Complaint and Demand for Jury Trial

13.     After multiple, inexplicable credit denials, Plaintiff pulled her Experian and Trans Union consumer reports on or around September 26, 2019.

14.     Upon review of her consumer reports, Plaintiff discovered that Experian and Trans Union were listing an address that she had never lived at and incorrectly reporting her birthday.

15.     Even more unsettling, Plaintiff found that Experian, Trans Union and Innovis had been reporting at least seven tradelines or accounts that do not belong to Plaintiff, including a Synchrony/Guitar Center account ("Inaccurate Account").

16.     Discovery will confirm the CRAs are mixing the information of another person with Plaintiff.

17.     Additionally, Plaintiff requested a copy of her consumer reports from LexisNexis and Innovis.

18.     Moreover, upon learning that Equifax Information Services, LLC was also reporting the inaccurate information and tradelines, Plaintiff disputed with Equifax.

19.     After its investigation, Equifax corrected the inaccurate information and tradelines and sent Plaintiff a copy of her updated credit report.

20.     At the date of this filing, the account is still being reported on Plaintiff's consumer files maintained with TransUnion, Experian, and Innovis.

21.     When Plaintiff mailed her detailed, written disputes and enclosures to Trans Union, Experian, and Innovis, they used a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as Defendant. It is an automated system and the procedures used by the CRAs are systemic and uniform.

22.     When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

*Gregg v. Synchrony Financial*
                                    Complaint and Demand for Jury Trial

23.     The ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

24.     Based on the manner in which the CRAs responded to – or did not respond to – each of the Plaintiff's disputes, representing that Defendant had "verified" the supposed accuracy of its reporting, Plaintiff alleges that the CRAs did in fact forward the Plaintiff's disputes via ACDVs to Defendant.

25.     Defendant understood the nature of the Plaintiff's disputes when they received the ACDVs from the CRAs.

26.     When Defendant received the ACDVs from the CRAs, it as well could have reviewed its own systems and separate disputes from Plaintiff and discovered that someone other than Plaintiff opened the Inaccurate Account.

27.     Notwithstanding the above, discovery will show Defendant follow a standard and systemically unlawful process when they receive an ACDV dispute. Basically, all Defendant does is review its own internal computer screens for the account and repeat back to the ACDV system the same information Defendant already had reported to the CRAs.

28.     When Defendant receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer systems is itself accurate.

29.     A check of her consumer files maintained by TransUnion, Experian, and Innovis also revealed that Synchrony was furnishing information about an account it issued for Guitar Center to Experian, TransUnion and Innovis as belonging to the Plaintiff.

30.     The information furnished by Synchrony to Experian, TransUnion and Innovis was at all times inaccurate. Plaintiff has never been legally obligated on an account from Guitar Center.

*Gregg v. Synchrony Financial*
Complaint and Demand for Jury Trial

31.     On or about November 11, 2019, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by Synchrony on her credit file.

32.     On or about a date better known to Experian and EOS, Experian furnished Plaintiff's dispute to Synchrony via e-Oscar.

33.     Synchrony failed to reasonably reinvestigate Plaintiff's dispute that Synchrony received from Experian in violation of the FCRA.

34.     On or about November 11, 2019, Plaintiff sent correspondence to TransUnion, requesting that Trans Union verify and correct the inaccurate, erroneous and unverified representations made by Synchrony on her credit file.

35.     On or about a date better known to Trans Union and Synchrony, TransUnion furnished Plaintiff's dispute to Synchrony via e-Oscar.

36.     Synchrony failed to reasonably reinvestigate Plaintiff's dispute that Synchrony received from TransUnion in violation of the FCRA.

37.     On or about October 25, 2019, Plaintiff sent correspondence to Innovis, requesting that Innovis verify and correct the inaccurate, erroneous and unverified representations made by Synchrony on her credit file.

38.     On or about a date better known to Innovis and Synchrony, Innovis furnished Plaintiff's dispute to Synchrony via e-Oscar.

39.     Synchrony failed to reasonably reinvestigate Plaintiff's dispute that Synchrony received from Innovis in violation of the FCRA.

40.     At the date of this filing, Synchrony has failed to reasonably reinvestigate into Plaintiff's dispute and has failed to accurately correct and update or delete Plaintiff's information.

*Gregg v. Synchrony Financial*
Complaint and Demand for Jury Trial

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

41.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

42.     The FCRA requires that "[a]fter receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A).

43.     Defendant Synchrony is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experience with any consumer and therefore constitutes a "furnisher" as codified at 15 U.S.C. § 1681s-2 of the FCRA.

44.     Based on the manner in which the CRAs responded to – or did not respond to – each of Plaintiff's disputes, representing that Synchrony had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian, TransUnion, and Innovis did in fact forward the Plaintiff's disputes via an ACDV to Synchrony.

45.     Synchrony understood the nature of the Plaintiffs' disputes when it received the ACDVs from Experian, TransUnion, and Innovis.

46.     When Synchrony received the ACDVs from Experian, TransUnion, an Innovis, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that Plaintiff did not owe Synchrony anything on the account she disputed, which inaccurately reflected that Plaintiff's accounts were due and owing.

47.     Notwithstanding the above, discovery will show Synchrony follows standard and systemically unlawful processes when they receive an ACDV dispute. Basically, all Synchrony

does is review its own internal computer screens for the accounts and repeat back to the ACDV system the same information Synchrony already had reported to the CRAs.

48.     When Synchrony receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer systems is itself accurate.

49.     As a result of Synchrony's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

50.     The violations by Synchrony were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Synchrony was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

51.     The law in this District and even nationally has long been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

52.     Discovery will show Synchrony was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when they followed the ACDV procedures used regarding Plaintiff's disputes. Discovery will further show that Synchrony knew that virtually every Circuit has adopted the reasonableness requirement established by *Johnson*, and while the Second Circuit has yet to speak on the subject, that courts within this Circuit have likewise applied *Johnson* in this context. *Okocha v. HSBC Bank USA, N.A.*, No. 08 CIV.8650(MHP), 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010).

*Gregg v. Synchrony Financial*
                                                        Complaint and Demand for Jury Trial

53.     Discovery will also show that the procedures Synchrony followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Synchrony intended its employees or agents to follow.

54.     As a result of Synchrony's violations of Section 1681s-2(b), Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Synchrony in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Natasha Gregg respectfully requests judgment be entered against Defendant for the following:

A.  Declaratory judgment that Defendant violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a);

C.  Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(c) and 1681o(b);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any further relief that this Court deems appropriate.

Respectfully submitted this 1ˢᵗ day of October 2020.

LAW OFFICE OF ABEL L. PIERRE,
ATTORNEY-AT-LAW, P.C

Attorney I.D.#AP-5508
140 Broadway, 46ᵗʰ Floor
New York, New York 10005
Telephone:  (212) 766-3323
Facsimile:  (212) 766-3322
abel@apierrelaw.com
*Attorneys for Plaintiff*

*Gregg v. Synchrony Financial*
Complaint and Demand for Jury Trial